UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
RODNEY LOCKHART,
                Plaintiff,                05-CV-0652[1]

v.                                              DECISION
                                                  and ORDER
JOANNE B.BARNHART,
Commissioner of Social Security,

                Defendant.
_____


## INTRODUCTION

Plaintiff, Rodney Lockhart ("Lockhart") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On May 9, 2006, the Commissioner moved for judgment on the pleadings pursuant to Rule 12© of the Federal Rules of Civil Procedure. On July 24, 2006, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that the Commissioner's decision is supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court, Western District of New York, by Order dated April 4, 2007.

BACKGROUND

Lockhart applied for disability benefits on April 7, 2003 claiming that he was disabled by back and neck pain and asthma since October 16, 2002, after a motor vehicle accident. (Tr. 61-63) Plaintiff's application was denied by notice dated June 30, 2003. (Tr. 24)  Plaintiff appealed this decision and requested a hearing. (Tr. 76)  Following a hearing held on May 11, 2005 during which plaintiff testified and was represented by counsel, the ALJ found that plaintiff was not disabled by decision dated June 24, 2005. (Tr. 11-19)  After the Appeals Council denied plaintiff's request for review on July 29, 2005, the decision became final and plaintiff commenced this action on September 15, 2005.

Plaintiff was in a motor vehicle accident in October, 2002 after which he experienced pain and stiffness in his back. (Tr. 191)  He first went to his primary care physician, Dr. Siaw, one week after the accident. (Tr. 122)  Frontal and three lateral views of the thoracic spine taken on October 22, 2002 indicated that the vertebrae were of "generally normal alignment" with "disc spaces of normal height".  (Tr. 114)   Plaintiff was examined on November 5, 2002 at which time he was found to be tender at the paraspinal area. (Tr. 119) He was directed to take Motrin, Flexeril and pursue chiropractic services. (Tr. 119)  Medical records dated November 19, 2002 indicate that plaintiff reported that he

continued to experience pain in the thoracic spine and continued to take Flexeril, Motrin and Flovent inhaler. (Tr. 118)

Plaintiff began treatment with Dr. Julius Horvath, a chiropractor, on October 25, 2002. (Tr. 142) Lockhart continued chiropractic treatment three times per week. (Tr. 191) On November 15, 2002, Dr. Horvath scheduled Lockhart for a MRI study of the lumbar spine which showed that plaintiff had decreased flexion of the lumbar spine by 10 degrees, decreased extension of the lumbar spine by 10 degrees and positive lumbar spine Kemps Test, positive straight leg raise on the left and right at 70 degrees and paraspinal muscle spasms throughout the lumbar spine. (Tr. 146)

Plaintiff was treated at The Pain Rehab Center of Western New York which reported on March 5, 2003 that plaintiff had "evidence of cervicalgia with myofascial low back pain." (Tr. 178) Lockhart was given Lidoderm patches and Thermacare pads for the neck and back. (Tr. 178) A sphenopalatine ganglion block was performed on plaintiff in April, 2003 but Lockhart reported no relief from this procedure. (Tr. 179) Similarly, plaintiff reported that the cream and patches did not help the pain. (Tr. 180) Plaintiff's MRI was normal.  Plaintiff was given three trigger injections of the three identified areas of pain. (Tr. 180) Plaintiff again reported no relief from this treatment. (Tr. 183) In September, 2003, the Pain Rehab Center recommended pool therapy.

(Tr. 187) Plaintiff was unable to initiate this activity for lack of insurance coverage. (Tr. 188)

On June 12, 2003, an independent medical examination was conducted on Lockhart. (Tr. 122-125) Lockhart was found to have had asthma since 1988 and used Albuterol which he reported was exacerbated by cold symptoms. (Tr. 122) Lockhart reported that he had pain and occasional muscle spasm in his neck and back. (Tr. 122) He denied radiculopathy or any neurological deficit. (Tr. 122) At the time of the examination, plaintiff was taking Ibuprofen, Cyclobenzaprine and Albuterol. (Tr. 122) The medical exam showed plaintiff to "be in no acute distress". (Tr. 123) He showed full flexion and extension of the cervical spine, no abnormality of the thoracic spine and had full lateral flexion and rotary movements. (Tr. 124) No motor nor sensory deficit was noted. Plaintiff was found to have "minimum to mild limitation with bending, twisting, heavy lifting and extension." (Tr. 125)  His lower extremities had no problems that would impede plaintiff from walking, standing or going up or down stairs. (Tr. 125) Plaintiff was advised to avoid irritants that could trigger or exacerbate his asthma condition. (Tr. 125)

On June 30, 2003, Dr. Verna Yu completed a Physical Residual Functional Capacity Assessment for Lockhart. (Tr. 136-141) Dr. Yu found that plaintiff had no exertional, postural, manipulative, visual, communicative nor environmental limitations. (Tr. 137-139)

4

On August 12, 2004, plaintiff was examined by Dr. Cameron Huckell, an orthopaedic surgeon. (Tr. 191-194) Dr. Huckell noted that plaintiff rated his neck pain at an 8 out of ten on his best days and 10 out of 10 at worst. (Tr. 192) Plaintiff reported no radiating numbness but had tingling pain in both wrists which was diagnosed on EMG as bilateral carpal tunnel syndrome. (Tr. 192) Lockhart rated his lumbar pain as moderate and his pain as a 5 out of 10 at best and 8 out of 10 at worst. (Tr. 192) Dr. Huckell observed that plaintiff was able to walk with a normal gait, had a lumbar range of motion on forward flexion of 75% of normal and cervical range of motion was full in all planes. (Tr. 193) Strength was found to be 5/5.  Lumbar MRI done in November 2002 showed no disc herniation or degeneration. (Tr. 193) The cervical MRI done in January 2003 showed straightening and reversal of the normal cervical lordosis with the absence of frank disc herniation. (Tr. 193) A digital radiograph done in August 2003 showed bilateral spinuous accessory ligamentous instability at C1-C2 and anterior langitudinal ligament instability from C3 to C5. (Tr. 193-194) Dr. Huckell concluded that Lockhart suffered significant flexion and extension injuries to the cervical and lumbar spine as a result of the automobile accident and that it was possible that Lockhart had cervical annular disc tears.  Dr. Huckell recommended non-operative treatments to provide pain relief and gave plaintiff

5

exercise booklets to strengthen his cervical and lumbar spine. (Tr. 194)

Dr. Huckell examined plaintiff again on March 15, 2005 for a follow up spinal evaluation. (Tr. 195)  Lockhart reported ongoing pain that had gotten worse. (Tr. 195)  An MRI report dated January 7, 2005 showed "small 2 mm right paracentral C6-C7 disc herniation extending superiorly along the posterior aspect of C6, minimally impinging on the anterior aspect of the thecal sac.  C4/C5 annular tears and hypermobility of the C4-C5 facet joints bilaterally and hypermobility of the left C5-C6 facet joint on flexion and extension views." (Tr. 198)  Plaintiff continued to attend chiropractic treatments twice a week and was taking over the counter Motrin and Proventil. (Tr. 196)  Dr. Huckell considered surgery to be a last resort and instead recommended that plaintiff continue regular non-surgical follow up and treatment.  Dr. Huckell also gave plaintiff a prescription for a physiatry evaluation and treatment. (Tr. 198)

Plaintiff testified in May, 2005 that he was no longer seeing any doctors except for chiropractic treatments. (Tr. 211)  At that time, plaintiff was taking only non-prescription medications for pain. (Tr. 211)

Lockhart most recently worked as a bricklayer from 1998 to 2003. (Tr. 87) This position required him to walk and/or stand seven and a half hours each work day.  Further the job required him to stoop, kneel, crouch and handle or grab big objects regularly.

6

(Tr. 77) Lockhart claimed that he had to frequently lift 40 to 50 pounds as part of his job. (Tr. 77)

Lockhart's daily activities include caring for his baby daughter, playing video games and watching television. (Tr. 97, 211) Lockhart claimed that he can dress and bathe himself but can no longer play sports or work on his car. (Tr. 97) While Lockhart can prepare simple, quick meals, he stated that he cannot cook because it required standing for too long. (Tr. 98) He can drive a car and shop. (Tr. 100) Lockhart can walk for 20 minutes before he needed to rest but can continue walking after only a few minutes rest. (Tr. 102) Lockhart testified that he drives a car one to two hours a day. (Tr. 212) He also goes to movies. (Tr. 213)

## DISCUSSION

Lockhart is a 31 year old male with a high school equivalency degree. (Tr. 206) His past work history includes working as a bricklayer, dish washer, laborer and short order cook. (Tr. 76) Plaintiff's medical difficulties include back and neck pain and asthma which he claimed made him incapable of working as of October 16, 2002. (Tr. 76)

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as:

> the inability to engage in any substantial gainful
> activity by reason of any medically determinable physical

7

> or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B).  <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.

If he is not, the fifth and final inquiry is whether the claimant can perform any other work. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

The ALJ found that plaintiff 1) had not engaged in substantial gainful activity since the date of disability, October 16, 2002; (2) that plaintiff had impairments that were severe; (3) that plaintiff did not have an impairment that met or medically equaled the listed impairments in Appendix 1, subpart P, Regulation No. 4; (4) that plaintiff could no longer perform any of his past relevant work; and that (5) plaintiff had the residual functional capacity to perform a full range of light work (Tr. 11-18)

The ALJ based his conclusions concerning plaintiff's residual functional capacity on the medical records. Plaintiff's age, education, and residual functional capacity were viewed in conjunction with the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations which directed a finding that plaintiff would be capable of a significant range of light and medium work. (Tr. 17)

Plaintiff contends that the ALJ failed to consider plaintiff's impairments in combination, failed to give controlling weight to plaintiff's treating physicians to support his conclusion that plaintiff's testimony was not credible.

The medical records do not support plaintiff's contentions. The clinical findings on examination were not consistent with a

level of pain which would preclude all work activity. The chiropractic examination in October 2002 revealed full motor strength and sensory examination within normal limits. (Tr. 143) An examination by Lockhart's treating physician in March 2003 showed motor, tone and sensory findings within normal limits as well as normal deep tendon reflexes and head, neck and lumbosacral spinal motions. (Tr. 178) The consultative examination confirmed that plaintiff walked with a normal gait, could fully squat, rise from a chair without difficulty and needed no assistance getting on and off the examination table. (Tr. 123) Plaintiff had full flexion of the lumbar spine and full flexion, extension, lateral flexion and full rotary movement of the cervical spine. (Tr. 124) In addition, plaintiff's treatment was limited. At the time of the hearing, plaintiff was treated with chiropractic manipulation and over the counter medications. (Tr. 210-211)

The ALJ properly concluded that the combination of plaintiff's impairments did not render him totally disabled. The medical evidence did not support a finding that carpal tunnel syndrome disabled Lockhart from working. Plaintiff's hand and finger dexterity was intact and he had full grip strength. (Tr. 124, 188, 189) Moreover, plaintiff reported no clumsiness with his hands or fingers. (Tr. 192) Although plaintiff did suffer from asthma since 1988, there was no indication that it was not controlled by medication. (Tr. 122)

The ALJ afforded proper weight to the opinions of the treating physicians. While plaintiff's own physician acknowledged that plaintiff could no longer perform the duties of his prior work, he recommended that plaintiff consider another type of work. (Tr. 189) In fact, his physician found plaintiff to have "minimum to mild limitation with bending, twisting, heavy lifting and extension." (Tr. 125) Similarly, plaintiff's other physician, Dr. Huckell, recommended non-operative treatments and gave plaintiff exercise booklets to strengthen his cervical and lumbar spine. (Tr. 194) Even in 2005, Dr. Huckell considered surgery as a last resort. (Tr. 198)

Where, as here, the objective evidence does not support the subjective complaints of pain, the ALJ properly found plaintiff to not be fully credible. In his decision, the ALJ pointed out that plaintiff's complaints of constant pain and numbness in his arms and wrists which allegedly caused him trouble with fine manipulations and reaching were inconsistent with plaintiff's testimony that he could lift a gallon of milk. Further, Lockhart admitted that he drove one to two hours per day, went out to dinner or the movies and was able to do the exercises prescribed by the chiropractor. In his written statements, plaintiff reported that he played video games, took care of his personal needs and cared for his youngest child. These activities in conjunction with the limited treatment for the pain, and the objective medical evidence

11

are sufficient to undermine plaintiff's subjective claims of total disability.

## CONCLUSION

This Court finds that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the Commissioner's motion for judgment on the pleadings is granted and the Complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
      MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 4, 2007